DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 19-CR-0381-03 CRB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Judge: Hon. Charles R. Breyer |
| ANGEL DAVID CENTENO, a/k/a "Manuel Arteaga", | Sentencing Date: August 11, 2020<br>Time: 1:00 p.m. |
| Defendant. | |

## I. INTRODUCTION

Throughout 2019, Angel David Centeno[1] served as the right-hand man to Andy Reanos-Moreno, the leader of a drug trafficking organization operating in the Bay Area. On a near daily basis, Centeno

---

[1] The defendant's true name is Angel David Centeno. As admitted to in the plea agreement, however, Centeno at times used the alias Manuel Arteaga. (Plea Agreement ¶ 1.) In discovery materials, including materials attached to the Declaration of Sailaja M. Paidipaty, filed concurrently with this memorandum, the defendant is referenced by the name Manuel Arteaga.

delivered drugs to several different locations within the East Bay where the organization housed over a dozen street-level dealers. Each day, these street-level dealers ordered drugs from Reanos-Moreno; Reanos-Moreno provided the drugs to Centeno who then delivered the orders to the houses. Once received, the street-level dealers traveled from the East Bay to the Tenderloin neighborhood of San Francisco where they re-sold the drugs.

Agents repeatedly saw Centeno make these deliveries to locations in the East Bay. In July 2019, law enforcement received state search warrants for two houses associated with the Reanos-Moreno organization – one on 91st Avenue in Oakland (the "91st Avenue House") and the second on 103rd Avenue in Oakland (the "103rd Avenue House"). On the days the warrants were executed, officers and agents saw Centeno arrive at each respective house, go inside for a few minutes, and quickly leave. Immediately afterwards, agents executed the warrants and seized distribution amounts of heroin, methamphetamine, cocaine, and cocaine base, as well as cash and drug paraphernalia such as baggies and digital scales.

Since law enforcement had found the 103rd Avenue House, the street-level dealers living there needed a new place to stay. Reanos-Moreno moved them into an apartment on High Street in Oakland where Centeno lived. Centeno, then, moved in with Reanos-Moreno and his girlfriend, co-defendant Karol Erazo Reanos, who were already renting a house on Earl Street in Oakland (the "Earl Street House"). In August 2019, all three were arrested by federal agents at the Earl Street House. Agents seized methamphetamine, cocaine base, fentanyl, heroin, and $28,288.

Centeno's work as a "runner" for the Reanos-Moreno DTO was mutually beneficial to both men. In early 2019, Reanos-Moreno delivered the re-supplies of drugs himself. By hiring Centeno, Reanos-Moreno freed up his time, allowing him to focus on expanding his organization by sourcing drug shipments from Southern California. For Centeno, it was a promotion from his prior job of selling drugs on the street in San Francisco. Between 2016 and 2017, Centeno was arrested on four occasions by officers of the San Francisco Police Department (SFPD) for drug trafficking. In 2017 alone, he was arrested in June, July, and December. Working as Reanos-Moreno's lieutenant kept him off the streets where he faced a greater risk of getting caught.

Previously, this Court sentenced several of Centeno's co-defendants in this case, all of whom were street-level dealers. In contrast, Centeno served a distinct role within the organization, one with greater access to Reanos-Moreno – the leader – and one that lessened the risk of detection by law enforcement. Centeno's sentence, therefore, should be greater than those imposed upon the co-defendants who have come before this Court. In light of the defendant's role, his facilitation of near daily drug deliveries, and his prior drug trafficking arrests, the government seeks the imposition of a 63-month sentence, followed by three years of supervised release, a $100 special assessment, and forfeiture of $28,288 seized from the Earl Street House in August 2019.

## II. SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(5):<br>(At least 1,000 KG but less than 3,000 KG of Converted Drug Weight) | 30 |
| b. | Safety Valve, U.S.S.G. §§ 2D1.1(b)(18), 5C1.2 | - 2 |
| c. | Acceptance of Responsibility: | - 3 |
| d. | Adjusted Offense Level: | 25 |

The base offense level reflects the combined quantity of drugs seized from the 91st Avenue House and the 103rd Avenue House following Centeno's drop offs, and the drugs seized from the Earl Street House where Centeno lived in August 2019 with Reanos-Moreno and Erazo.

Arteaga is a Criminal History Category II. The parties agree that under the First Step Act, Centeno qualifies and has met the requirements for relief under the federal safety valve. That two-point reduction is reflected in the calculation above. The Guidelines range for imprisonment associated with adjusted offense level 25 and Criminal History Category II is 63 to 78 months.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under

the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

As the Court knows based on prior sentencings, the charges here stem from a federal wiretap investigation described in detail in the Criminal Complaint filed on August 31, 2019. (*See* Dkt. 1, Compl. (originally filed under 3:19-71162 TSH).) As described in the Complaint, the investigation uncovered an organized drug network where Reanos-Moreno housed street-level dealers in houses and apartments in the East Bay. (*See* Dkt. 1, Compl. ¶¶ 17-26.) On a near daily basis, the street-level dealers placed orders for drugs with Reanos-Moreno who initially dropped them off himself, and later sent Centeno to make the drop-off. (*Id.*) The street-level dealers then traveled to the Tenderloin to resell the drugs. (*Id.*)

In January and February 2019, agents intercepted phone calls between Reanos-Moreno and the street-level dealers regarding orders for drugs. (*See* Dkt. 1, Compl. ¶¶ 52-96.) Electronic and physical surveillance revealed Reanos-Moreno's practice of driving the requested drugs to these dealers. (*Id.*) But by March 2019, the organization's practices had changed with the introduction of Centeno. On March 23, 2019, SFPD officers saw Reanos-Moreno park his car near an intersection in Oakland where Centeno was waiting in another car. (Dkt. 1, Compl. ¶¶ 134-135.) Reanos-Moreno threw a weighted plastic bag out of his driver's-side window and onto the hood of Centeno's car. (*Id.*) Centeno then grabbed the bag and both men drove off. (*Id.*) This quick transaction was a common way in which Centeno received the drugs that he was to distribute. On another occasion on May 23, 2019, Reanos-Moreno spoke over the phone with Centeno and discussed another meeting spot. (Paidipaty Decl., Exhibit A, Line Sheets, Call 30.) After learning where Centeno was located at the time, Reanos-Moreno

responded that he was on his way. (*Id.*) He instructed Centeno to wait in his car and said he would pass by. (*Id.*) Two hours later, Centeno called Reanos-Moreno and said he was finished. (*Id.* at Call 35.) Reanos-Moreno said he would meet Centeno the next day to "gather/collect it all." (*Id.*) Based on the timeline and agents' prior observations, the calls indicate that Reanos-Moreno met Centeno, gave him drugs to distribute, Centeno resupplied the organization's houses, collected money from the street-level dealers, and then agreed to meet Reanos-Moreno the following day to provide the proceeds from the drug sales.

During May 2019, officers saw Centeno repeatedly make quick stops into houses associated with the Reanos-Moreno organization. (Dkt. 1, Compl. ¶¶ 138-142.) Based on information learned through the investigation, officers received warrants authorizing the search of the 91st House and the 103rd Avenue House. On the day that each of the warrants were executed, agents saw Centeno make his typical stop at each location for his daily drop-off. (Dkt. 1, Compl. ¶¶ 207-209; 223-236.) After Centeno left the locations, agents executed the warrants where they seized heroin, methamphetamine, cocaine, cocaine base, and fentanyl, in addition to cash and drug paraphernalia. (Dkt. 1, Compl. ¶¶ 207-216; 231-242.)

After learning of the search at the 91st Avenue House, Reanos-Moreno and Erazo spoke on the phone. Erazo remarked, "Tell Come to be careful…he was lucky; he went to take care of them before." (Dkt. 1, Compl. ¶ 219.) Later in the conversation, Erazo went on to say, "All we needed was for Come to be there and for him to get screwed." (*Id.*) In these calls Erazo referenced Centeno by his nickname, "Come." She noted that they were lucky that Centeno had finished his drop-off to the house before the police came ("he went to take care of them before") because the organization – particularly herself and Reanos-Moreno – would be exposed if Centeno was arrested.

Following the warrant executions, the street-level dealers living in those houses needed new places to stay. The organization moved them into the High Street Apartment where Centeno previously lived. Centeno then moved in with Reanos-Moreno and Erazo.

In addition to his main responsibility as a drug runner, Centeno played a role in managing the quantities of drugs that the organization was holding and maintaining relationships with the street-level

5
UNITED STATES' SENTENCING MEMO.
NO. 19-0381-03 CRB

dealers. For example, he provided feedback to Reanos-Moreno regarding the performance of the street-level dealers and the quality of drugs being sold. During an intercepted call on May 28, 2019, Centeno told Reanos-Moreno that one of the street-level dealers had no money to pay for additional drugs because he had not sold the prior batch of drugs provided. (Dkt. 1, Compl. ¶¶ 148-151.) Centeno stated, "That shit looks so bad." (*Id.*) He went on to say that his cousin and another friend of his who previously ordered drugs have not called for a resupply. (*Id.*) Based on the context of the calls. Centeno was informing Reanos-Moreno that the prior drugs sold were poor quality and therefore the street-level dealers were unable to sell them. Centeno said he reached out to his friend to ask whether the friend wanted to purchase more drugs. (*Id.*) Later in the call, Reanos-Moreno asked how much drugs Centeno had left from the last batch and he provides direction on how to proceed. (*Id.*) Undoubtedly, Centeno took directions from Reanos-Moreno; but the calls indicate that he also assisted in drumming up business for the organization by reaching out to friends and family (for example, his cousin).

Finally, Centeno's current case is not his first run-in with law enforcement since he entered the United States. Centeno was arrested once in 2016 and three times in 2017 – June, July, and December – for drug trafficking. These arrests did not dissuade Centeno from the drug trade, but rather caused him to move from a vulnerable position selling narcotics on the street to a behind-the-scenes role. Centeno's sentence should reflect the need to deter future conduct and take into account his relative position in comparison to the street-level dealers that have previously come before this Court.

## IV.   CONCLUSION

The government respectfully recommends the imposition of a sentence of 63 months in prison, 4 years of supervised release, a $100 special assessment, and forfeiture of $28,288 seized from the Earl Street House in August 2019

DATED: August 4, 2020                                         Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s_
SAILAJA M. PAIDIPATY
Assistant United States Attorney