JULIA M. JAYNE (State Bar No. 202753)
ASHLEY RISER (State Bar No. 320538)
Email: julia@jaynelawgroup.com
Email: ashley@jaynelawgroup.com
JAYNE LAW GROUP, P.C.
483 9th Street, Suite 200
Oakland, California 94607
Telephone: (415) 623-3600

Attorneys for Defendant NICOLAS SORIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-19-381 CRB |
|      Plaintiff, | **NICOLAS SORIA'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE UNDER 18 U.S.C. § 3553(A)** |
| v. | |
| NICOLAS SORIA, | |
|      Defendant. | Date: September 23, 2020<br>Time: 1:30 PM<br>Judge: Hon. Charles Breyer |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

PROCEDURAL BACKGROUND ........................................................................ 2

DISCUSSION ......................................................................................................... 3

    I.    FACTUAL BACKGROUND AND HISTORY ........................................ 3

        A.    Personal History ................................................................. 3

            1.    Health ................................................................... 3

            2.    Family.................................................................... 3

            3.    Personal Relationships and Character ................ 4

            4.    Employment History ........................................... 5

        B.    The Offense Conduct ........................................................ 6

    II.    THE APPLICABLE GUIDELINE RANGE IS the "STARTING POINT" AND "INITIAL BENCHMARK" FOR THIS COURT................ 6

        A.    The Court Should Exercise Its Vast Discretion to Account for Mr. Soria's Limited Culpability. .................................... 7

    III.    Specific Characteristics Warrant a Variance............................... 8

        A.    Mr. Soria's Conviction Makes Him Deportable. ............................ 10

        B.    Mr. Soria Is the Type of Inmate Who Would Be Released in the COVID-19 Crisis........................................................... 10

    IV.    FACTORS RELEVANT TO A SENTENCE THAT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY. .................. 11

        A.    A Credit for Time Served Sentence Avoids Sentencing Disparities.................................................................... 11

        B.    Prison's Criminogenic Effects. ..................................... 13

CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

<u>Cases</u>

*Gall v. United States*, 128 S. Ct. 586 (2007) .................................................................... 6

*Kimbrough v. United States*, 128 S. Ct. 558 (2007) ........................................................... 6

*Koon v. United States*, 518 U.S. 81 (1996) ........................................................................ 7

*Rita v. United States*, 551 U.S. 338 (2007) ........................................................................ 8

*United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009) ....................................................... 9

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ........................................................ 6

*United States v. Gomez*, 215 F. App'x 200 (4th Cir. 2007) ................................................ 9

*United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) ........................................................ 9

*United States v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004) ....................................... 10

*United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997) ................................................... 8

*United States v. Miller*, 991 F.2d 552 (9th Cir. 1993) ........................................................ 8

*United States v. Paul*, 239 F. App'x 353 (9th Cir. 2007) ................................................... 9

*United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007) ............................................... 9

*United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) ................................................ 9

*United States v. Woods*, 159 F.3d 1132 (8th Cir. 1998) ..................................................... 9

<u>U.S. Sentencing Commission Guidelines</u>

§5K2.20 ............................................................................................................................. 10

<u>Other Authorities</u>

Bureau of Labor Statistics, U.S. Dep't. of Lab., *The Employment Situation* (Aug. 2020),
     https://www.bls.gov/news.release/pdf/empsit.pdf ................................................... 6

*Certain Medical Conditions and Risk for Severe COVID-19 Illness*, CENTERS FOR DISEASE
     CONTROL AND PREVENTION (Aug. 14, 2020),
     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
     conditions.html ................................................................................................... 3, 11

Craig Haney, *The Psychological Impact of Incarceration: Implications for Post-Prison Adjustment*
     4 (2001), https://aspe.hhs.gov/pdf-report/psychological-impact-incarceration-implications-
     post-prison-adjustment ............................................................................................. 15

Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*,

91 Prison J. 48S, 50S-51S (2011) ........................................................................ 16

Martin H. Pritikin, *Is Prison Increasing Crime*, 2008 Wis L. Rev. 1049, 1054-72 ........................ 15

Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ............... 16

National Institute of Justice, *Five Things About Deterrence*, https://www.ncjrs.gov/pdffiles1/nij/247350.pdf ................................................................. 16

*Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf ... 12

U.S.S.C., Staff Discussion Paper, *Sentencing Options under the Guidelines* 19 (1996) ............... 15

**SENTENCING MEMORANDUM**

The Defendant NICOLAS SORIA, through his counsel, Julia M. Jayne and Ashley Riser, submits this Sentencing Memorandum in support of his request for a sentence of credit for time served, community service in a homeless shelter, youth center or food bank, counseling as needed, and three years of supervised release.

**INTRODUCTION**

For the past 24 years, Mr. Soria has led a simple, hard-working, family-oriented life in the United States. He and his wife raised two daughters, both born in the U.S. He worked in a variety of blue collar jobs. He made mistakes along the way, as people are oft to do, but none as grave as the decision to deliver drugs to his co-defendant.

Put simply: Mr. Soria acted as a courier on behalf of a drug operation in the Bay Area that he knew little about. His conduct was on behalf of someone in Southern California who apparently had a relationship with co-defendant Andy Manuel Reanos-Moreno. Mr. Soria was the messenger, courier, and of course, the fall guy when law enforcement swept in. Mr. Soria did not know how long Mr. Reanos-Moreno had been dealing in drugs in the Bay Area, did not know the scope of his operation, and was acting as a middleman for a mere $500[1]. Thus, he was not charged with conspiracy. He is also the only defendant in this case who is not charged with a mandatory minimum sentence and one of the few who was able to remain out of custody. These two factors reflect his minimal involvement and minimal role.

Moreover, after decades spent working in garages and factories to support his family, Nicolas Soria's health is deteriorating: he is slowly going blind and deaf as a result of Type 2 diabetes, and last year, he was hospitalized for several weeks because of pneumonia. These

---

[1] During his interview with the U.S. Probation Officer, Mr. Soria was asked if he received any money in exchange for his actions. However, Mr. Soria, who spoke to the Probation Officer with an interpreter, misunderstood the question and thought that the question was if he was paid after the trip. Mr. Soria truthfully replied no because he was paid $500 before the trip by the "friend" in Southern California. This money was intended to cover gas money and compensate Mr. Soria for his time.

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

conditions are difficult – and potentially life threatening – to manage at any time, but Mr. Soria must now do it during a global pandemic where he is uniquely vulnerable.

As discussed below, Mr. Soria did something foolish, but that one decision should not outweigh the thousands of good decisions he has made throughout his life. If Mr. Soria is sentenced to prison, his family, friends, and community will likely lose him forever because he will be deported upon release. Given his significant medical conditions, especially while COVID-19 continues to spread in prisons, and his limited support network in Mexico, a custodial sentence would have unintended and disproportionately severe consequences.

## PROCEDURAL BACKGROUND

On August 15, 2019, an indictment was filed, charging Nicolas Soria with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). After his Initial Appearance in the Central District of California, Mr. Soria was released on bond under the supervision of U.S. Pretrial Services. Mr. Soria then made an Initial Appearance in the Northern District of California and on September 18, 2019, he was released on the same conditions as before. These conditions included: an ankle monitor, no contacting co-defendants; no possessing drugs; search conditions; drug testing; and no alcohol. At the time of sentencing, Mr. Soria will have been on Pretrial Supervision for over a year without a single violation.

On September 23, 2020, Mr. Soria will plead guilty to count two of the captioned Indictment charging him with Possession with Intent to Distribute Cocaine in violation of 18 U.S.C. § 841(a)(1), (b)(1)(C). After entering his plea, Mr. Soria will be sentenced.

The U.S. Probation Officer recommends a sentence of 27 months. Presentence Investigation Report (PSR), Sentencing Recommendation, p. 1. This variance reflects some of the Section 3553 factors discussed below, but does not account for others, including the fact that Mr. Soria has successfully been under Pretrial Supervision for over a year without a single violation, had a minimal role in the offense, has severe health conditions, and that Mr. Soria's proposed sentence would not be disproportionate with the sentences of his co-defendants.

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

2

# DISCUSSION

## I.   FACTUAL BACKGROUND AND HISTORY

### A.   Personal History

#### 1.   Health

Mr. Soria is obese, and he has Type 2 diabetes, high blood pressure, and high cholesterol. *See* Declaration of Ashley Riser ("Riser Decl."), Ex. C, Nicolas Soria's Redacted Medical Records ("Medical Records"). Because of his diabetes, he is slowly going blind and deaf, and he is particularly susceptible to secondary infections. For example, last year, he was hospitalized for several weeks after developing pneumonia. PSR ¶ 57. Along with the above, Mr. Soria also suffers from arthritis in his feet and hands, as well as depression. PSR ¶¶ 55, 56. According to Mr. Soria's daughter, Stephanie, his physical pain is "intolerable" at times. *See* Riser Decl., Ex. A, Character Letters ("Letters"), p. 2.

Mr. Soria's medical conditions make him vulnerable at any time, but now, in the wake of the coronavirus pandemic, he is particularly susceptible to significant illness or death. Diabetes, high blood pressure, high cholesterol, obesity, and bronchitis are all correlated with increased mortality from COVID-19. *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Aug. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

#### 2.   Family

Growing up in Tijuana, Mexico, Nicolas Soria never had enough food, and things only got worse after his father divorced their mother. The Soria family was also fractured by death: his sister, Cecelia, died from an epileptic seizure, and his little brother Jose, or "Pepe," was swept away in a 1990 flood. A few years ago, his brother, Armando, died because of kidney problems, and a decade before, his brother, Guadalupe, passed away. His remaining siblings – Fausto

Salazar, Marta, Juan, and Mayra – live in Mexico, but Mr. Soria rarely speaks with them. PSR ¶ 47.

When Mr. Soria was twenty-one, he came to the United States to be with his wife, Delia Xochitl Gaz, in search of a better life. The couple then had two daughters, Stephanie, and Roxanna, who are U.S. citizens. PSR ¶ 50. Mr. Soria spent the girls' childhoods working; as the sole provider, his family depended on him for everything. Before Mr. Soria's criminal case, both daughters planned to attend college and get a degree. But those dreams have been deferred because of Mr. Soria's legal troubles and the coronavirus pandemic: Stephanie and Roxanna dropped out of community college to work full-time to support the family. PSR ¶ 51.

### 3.   Personal Relationships and Character

Mr. Soria does not tell people who he is; instead, he shows them. *See* Letters, p. 4. As the many letters submitted on his behalf show, Mr. Soria is a compassionate and principled man committed to his family. His daughter Stephanie writes about how grateful she is that her father prioritized her education and worked so hard to make sure their family had enough. She hopes to be able to repay him one day for all of his sacrifices. *Id*. at 2. Yet in despair, she writes that she fears he could die in prison due to all of his medical issues. *Id.*

His daughter Roxanna describes how her father creates a safe, close home for all of them and how losing him would tear apart that safety. She describes the devastating consequences on her family if they were to lose him to imprisonment or deportation. *Id.* at 6.

Another example of Mr. Soria's generosity and compassionate is how he took in his niece, Rosalie. When Rosalie was a year old, her father left and Mr. Soria "raised her as his own." *See* Letters, p. 2. Stephanie describes Rosalie as more of a sister than a cousin, but she admits that Rosalie loves Mr. Soria "a little more" than the rest of the Soria family. *Id*.

Another letter, this one from Claudia Gaz, Mr. Soria's niece, describes Mr. Soria's role in helping her take care of her two children after discovering that her husband had cancer. Claudia writes that Mr. Soria babysat the couple's two little boys so she could stay with her husband in the

hospital. *Id*. at 8. And, when Claudia's husband died four months ago, Mr. Soria helped make funeral arrangements. *Id*.

Mr. Soria's closest friend and former co-worker, Mauricio Mejia, describes what a hard-worker Mr. Soria is, and how no matter the job, he did it with integrity. *Id.* at 9. All of these accounts carry the theme that Mr. Soria is an incredible father and helpful and compassionate person, and how devastating it would be for the entire family to lose him.

### 4.   Employment History

Since the age of fourteen, Mr. Soria worked. At first, it was at a taxi service, and shortly after, he dropped out of school. Before coming to the United States, he worked at a grocery store, as a mechanic, and at a cardboard factory. PSR ¶ 49. Since then, he's studied to become an electrician, PSR ¶ 62, and he studied electromechanics to work on ever-increasing electrical-dependent cars. Unfortunately, because he does not have a social security number, he was never certified to be an electrician. *Id*. His hard work and constant employment in various blue-collar jobs provided for his family such that his daughters, unlike himself, were able to have food on the table and even attend community college.

That said, Mr. Soria has not consistently worked since being arrested. As an independent automobile mechanic, Mr. Soria lost several pending job opportunities when he was arrested. When he sought more work, Pretrial Services initially advised that he could not work because of his immigration status. Scared to make another mistake, Mr. Soria did not work until May 2020. It was only at this point, when he had a new pretrial officer who told him he could work, that he briefly worked as an electrician. However, this job was unfortunately shut down shortly after starting because of permit issues.

To make matters worse, the coronavirus pandemic plunged the American economy into a recession. Bureau of Labor Statistics, U.S. Dep't. of Lab., *The Employment Situation* (Aug. 2020), https://www.bls.gov/news.release/pdf/empsit.pdf. The unemployment rate rose to 14.7%, the highest level recorded since 1941. *Id*. Since then, Mr. Soria has been unable to find work as an

1  electrician or mechanic, and even though he has applied to taco stands and grocery stores, he

2  remains unemployed for the time being.

3  **B.      The Offense Conduct**

4  When Mr. Soria married Delia Xochitl Gaz, he was twenty years old, and despite his

5  youth, Mr. Soria was a committed husband and father. In fact, he was so devoted to his family that

6  he refrained from going out too much with friends or meeting new people. When Stephanie and

7  Roxanna were older and more self-sufficient, Mr. Soria decided to see what he had "missed." PSR

8  ¶ 24. While he did not typically drink to excess or ingest drugs, in recent years, he began going

9  "out." Restaurants with music and dancing quickly became his new "go to" place for him and his

10  wife, and he started meeting people.

11  One of those new people was an associate of Mr. Reanos-Moreno, and this associate

12  offered Mr. Soria the opportunity to make a little money and oblige his new "friends." Foolishly,

13  Mr. Soria agreed and that is how he became involved in what he suspected of course, was the

14  delivery of narcotics to Oakland.  He was stopped on July 11, 2019 by law enforcement and

15  arrested after officers discovered drugs and money in a black grocery bag. PSR ¶ 20.

16  **II.     THE APPLICABLE GUIDELINE RANGE IS THE "STARTING POINT" AND
         "INITIAL BENCHMARK" FOR THIS COURT**

17

18  When calculating the appropriate sentence, courts should calculate the applicable

19  Guideline range and "should then consider all of the [18 U.S.C.] § 3553 (a) factors..." *Gall v.*

20  *United States*, 128 S. Ct. 586, 596-597 (2007). That said, the court is free to disagree with the

21  Guidelines range and stated policy considerations. *Kimbrough v. United States*, 128 S. Ct. 558

22  (2007). Further, this range is not presumptively reasonable. Instead, the court "must make an

23  individualized assessment." *Gall*, 128 S. Ct. at 596-597. Stated another way, "[w]hile the

24  Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that

25  are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520

26  F.3d 984 (9th Cir. 2008) (en banc). This discretion reflects the "federal judicial tradition" that

27

28  nicolas soria's SENTENCING MEMORANDUM
   Case No. CR-19-381 CRB

allows "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id*. at 598 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996). For that reason, under *Carty*, this Court should consider the applicable Guideline range while also considering Mr. Soria as an individual who is entitled to the consideration of the § 3553(a) factors.

### A.   The Court Should Exercise Its Vast Discretion to Account for Mr. Soria's Limited Culpability.

When Mr. Reanos-Moreno's associate met Mr. Soria, he learned that Mr. Soria was naïve and eager to develop a friendship. Mr. Soria was working full-time to support his stay-at-home wife and two daughters. In other words, Mr. Soria was the exact type of person that drug traffickers seek: he didn't have a serious criminal record and he could use extra money. Of course, this type of manipulation is common in drug trafficking cases: a sophisticated group will prey on vulnerable people with minimal criminal records, and they will exploit whatever that person needs or wants. Sometimes it's money, sometimes it's their family's safety, and sometimes it's simply belonging. Mr. Soria's motivation was simple: he wanted to impress his new "friend" and he wanted a little money. In his own mind, he minimized his role to justify this out-of-character activity.

Mr. Soria is like many of the other low-income drug couriers that this Court sees every day. Mr. Soria has worked since he was fourteen, and despite punishing and exhausting hours, it can be hard to stay afloat when supporting a family of four. So, when offered the chance to make a little money, Mr. Soria took it.

Unfortunately, the Guidelines' sentences do not take into account the socio-economic forces at play in these types of cases. There's a simple reason that people like Mr. Soria are typically represented in courtrooms just like this one across the country: the working poor desperately need money, and in spite of working sixty or more hours a week, they still don't have enough or barely enough to get by, especially in an expensive state like California.

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB
7

Ultimately, the Guidelines turn on the weight and type of drugs sold, but Mr. Soria did not have control or authority over any of these factors. While the government may argue that Mr. Soria played a key role in drug distribution, this argument skims over an important point: people like Mr. Soria are disposable, low-rung participants in any drug trafficking operation. Taking into account the cost of gas, Mr. Soria was paid less than $500 for the drive to Northern California.

Fortunately, this Court enjoys the discretion to sentence Mr. Soria differently: to a fair and just sentence that sufficiently punishes him while also giving him and his family a life together after this case concludes.

### III.    SPECIFIC CHARACTERISTICS WARRANT A VARIANCE

"(S)ection 3553(a) authorizes a sentencing judge to consider" the defendant's specific characteristics, such as "age, education, mental, or emotional condition, medical condition, employment history, lack of guidance as a youth, family ties, or … civic, charitable, or public service." *Rita v. United States*, 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring).

These factors warrant a variance:

- **Defendant punished by collateral consequences, including deportation,** public stigmatization, loss of benefits, entitlements, and citizen rights, loss of financial stability, and loss of employment opportunities. In this case, Mr. Soria will likely be deported if he goes into custody. Further, this family has already suffered collateral consequences such as financial instability due to his loss of employment and his daughters having to put their educational dreams on hold.

- **Lengthy pretrial supervision**. *United States v. Miller*, 991 F.2d 552, 554 (9th Cir. 1993).

- **Defendant had no control over the amount, type, or purity of drugs.** *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997) (defendant did not know or control over the amount or purity of the drugs).

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

8

- **Prison has greater significance for those imprisoned for the first time**. *United States v. Paul*, 239 F. App'x 353 (9th Cir. 2007). Mr. Soria has never spent more than a few days in jail.
- **Defendant's lesser role in the alleged conspiracy**. *United States v. Gomez*, 215 F. App'x 200 (4th Cir. 2007).
- **Defendant's otherwise outstanding character.** *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007). *See* Riser Decl., Ex. A, Letters.
- **Defendant's good deeds and past integrity.** *United States v. Woods*, 159 F.3d 1132 (8th Cir. 1998). *See* Riser Decl., Ex. A, Letters.
- **Excellent employment history.** *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008). Mr. Soria began working at the age of fourteen, and he has worked steadily since.
- **Aberrant behavior** by the defendant. *See* §5K2.20 of the Guidelines and *United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008). As discussed, the conduct leading up to this case was extremely aberrant for Mr. Soria, who previously had no connection to the world of drug distribution.
- **Defendant's personal characteristics and the offense were atypical**. *United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009).

Under the United States Sentence Guidelines (U.S.S.G.), Mr. Soria's sentencing range is 33 to 41 months, but this does not account for the §3553 factors. The U.S. Probation Office considered some of these factors when recommending a variance of 27 months, but this recommendation does not fully reflect their weight. It's for this reason that the correct and measured sentence is a sentence of no additional custody time, and instead, community service hours in a <u>homeless shelter, youth organization (such as Boys and Girls Club or YMCA) or a food bank</u>. This proposed sentence appropriately accounts for the § 3553 factors, including the more than one year that Mr. Soria has spent on Pretrial Supervision without any violations.

### A. Mr. Soria's Conviction Makes Him Deportable.

After this Court pronounces judgement, Mr. Soria will be deportable. Even though he has not had a life in Mexico for 24 years he will be shipped there. In other words, this conviction triggers more than the "actual deprivation of liberty." *United States v. Mateo*, 299 F. Supp. 2d 201, 210 (S.D.N.Y. 2004). While other courts have understood these "penalties and burdens" to include "losses of family life, of socioeconomic status, [] employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement," *id.*, the consequences here are much more dire.

If Mr. Soria is deported to Mexico, he will be delivered to a place he hasn't seen in nearly three decades, and his children and wife will not be there. Mr. Soria is not close to his remaining siblings, PSR ¶ 52, so it is unclear where he would live or receive needed medical treatment. These attendant consequences last far beyond that of a prison sentence or term of probation.

### B. Mr. Soria Is the Type of Inmate Who Would Be Released in the COVID-19 Crisis.

Mr. Soria is a non-violent, first-time federal offender with significant health issues, including diabetes, hypertension, and a previous hospitalization for pneumonia. *See* Riser Decl., Ex. C, Medical Records. These medical conditions mean that Mr. Soria is "at increased risk for severe illness from COVID-19." CDC, *supra* ("People of any age with the following conditions are at increased risk of severe illness from COVID-19: … Obesity… Type 2 diabetes mellitus."). In many respects, Mr. Soria is the type of federal inmate that the Attorney General and the Bureau of Prisons would <u>release</u> during the pandemic to alleviate chronic overcrowding and provide for the health and safety of staff and inmates who cannot safely be released.[2]

---

[2] *See, e.g.*, directives issued by Attorney General Bill Barr in late March and early April instructing the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates . . . in connection with the ongoing COVID-19 pandemic." *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

## IV.   FACTORS RELEVANT TO A SENTENCE THAT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY.

### A.   A Credit for Time Served Sentence Avoids Sentencing Disparities

Mr. Soria's requested sentence, credit for time served (one to two days), three years of supervised release, mental health counseling as directed, and specifically-tailored community service, recognizes more than the year he has served under Pretrial Supervision and his aberrant behavior. Such a sentence is not inconsistent with those already imposed on Mr. Soria's co-defendants:

| Name | Drug Quantity[3] | Guilty Plea | Sentence |
|---|---|---|---|
| Angel David Centeno | Meth. -145.36 g<br>Heroin – 41.7 g<br>Cocaine Base - 41.66 g<br>Fentanyl – 14.93 g<br>**Total – 3134.99 kg** CDW[4] | 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) | 36 months imprisonment, 4 years supervised release |
| Allan Josue Funez Osorto | Meth. -53.1 g<br>Heroin – 31.45 g<br>Cocaine Base - 14.84 g<br>Fentanyl - .499 g<br>**Total – 1147.69 kg** CDW | 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) | 15 months imprisonment, 3 years supervised release |
| Brayan Martinez | Meth. - 49.91 g<br>Heroin – 25.43 g<br>Cocaine Base - 14.82 g<br>**Total – 1076.55 kg** CDW | 21 U.S.C. § 846, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Time-served, 3 years supervised release |
| Jose Franklin Rodriguez Garcia | Meth. - 49.91 g<br>Heroin – 25.43 g<br>Cocaine Base - 14.82 g<br>**Total – 1076.55 kg** CDW | 21 U.S.C. § 846, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | 12 months, 1-day imprisonment, 3 years supervised release |
| Christian Rodriguez-Valle | Heroin – 31.3 g<br>Cocaine Base - 13.6 g<br>Cocaine – 7.27 g<br>Fentanyl – 7.135<br>**Total – 99.6 kg** CDW | 21 U.S.C. § 846, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Time-served, 3 years supervised release |
| Eric Javier Montoya Marquez | Heroin - less than 10 g | 21 USC 843(b) | Time-served, 3 years supervised release |

---

[3] Statement of U.S. in Resp. to Jan. 15, 2020 Ct. Order, *USA v. Reanos-Moreno* (Jan. 27, 2020), ECF No. 130.

[4] Converted Drug Weight, as defined by the Government in its Statement to the Court. ECF No. 130.

| Kevin Arteaga-Morales | Meth. – less than 5 g | 21 USC 843(b) | Time-served, 3 years supervised release |
|---|---|---|---|

Most of these co-defendants' conduct was far more egregious than Mr. Soria's. For example, Jose Franklin Rodriguez Garcia was alleged to have been an integral part of the drug dealing operation, lived in the drug distribution house, and had been previously deported. ECF. No. 147.

Co-Defendant Brayan Martinez, whose guideline level was also at 19, was alleged to have had 99 kilograms of total converted drug weight seized from his house, was previously deported, and had several prior drug arrests. ECF. No. 199.

Co-defendant Allan Josue Funez Osorto, who was sentenced to 15 months in prison for over 1,000 kilos of converted drug weight, was alleged to have had several drug-related arrests, had a firearm in the home, and was apparently a regular reseller in the DTO (his guideline level was 23). ECF No. 225.

The sentence Mr. Soria proposes also tracks the sentences imposed in a related case, CR-19-367 CRB:

| Name | Drug Quantity[5] | Guilty Plea | Sentence |
|---|---|---|---|
| Julio Cesar Viera-Chirinos | 31.4 g heroin | 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Time-served, 3 years supervised release |
| Gustavo Adolfo Gamez-Velasquez | Meth. (mix) - 59.5 g Cocaine base - 75.25 g Total – **387.72 kg** CDW | 21 USC § 843(b) | Time-served, 3 years supervised release |
| Rodulio Alexo Garcia | Total -- **20-40 kg** CDW | 21 USC § 843(b) | Time-served, 1-year supervised release |
| Elvin Mejia-Padilla | Meth. (mix) - 66.5 g Heroin – 3.5 g Cocaine Base - 103.25 g Cocaine – 47.25 g **Total – 514.66 kg** CDW | 21 USC § 843(b) | Time-served, 3 years supervised release |

---

[5] Statement of U.S. in Resp. to Jan. 15, 2020 Ct. Order, *USA v. Viera-Chirinos et al.* (Jan. 27, 2020), ECF No. 150.

| Yordi Yavier Agurcia Galindo | Meth. (mix) - 3.5 g<br>Heroin – 7 g<br>Cocaine Base - 7 g<br>Cocaine – 1.75 g<br>**Total – 39.35 kg** CDW | 21 USC § 843(b) | Time-served, 3 years supervised release |
| Rudis Valladeres-Caceres | Meth. (mix) – 38.5 g<br>Heroin – 63 g<br>Cocaine Base - 14 g<br>**Total – 190 kg** CDW | 21 USC § 843(b) | Time-served, 3 years supervised release |

In comparison, Mr. Soria's "CDW" equals **less than half a kilogram** of cocaine, and his guideline range is 33-41 months due to a bump in criminal history from a DUI three years ago that had a three-year informal probation period. Here, Mr. Soria was the only defendant not subject to a mandatory minimum. *See* ECF No. 130. Though Mr. Soria may not have spent as much time served in custody as other defendants, he has proven himself to be law-abiding and responsible under the strictures of pretrial release.

Furthermore, Mr. Soria was not charged with conspiring with the co-defendants because his conduct was more isolated in nature. He is the only defendant charged in Count Two of the Indictment. He made a delivery. He was not otherwise involved in the alleged Drug Trafficking Operation (DTO) of Reanos-Moreno. He was not involved in the Tenderloin operations and had no long-standing relationship with Reanos-Moreno.

In sum, a sentence for credit for time served is appropriate when compared with Mr. Soria's more heavily involved co-defendants and similarly situated defendants. On the other hand, a sentence of incarceration would not only create disparity, but would inflict consequences disproportionate to Mr. Soria's conduct, particularly given his unique health conditions.

**B.     Prison's Criminogenic Effects.**

Section 3553(a) instructs the Court to consider the need to protect the public from future criminal conduct. Sending Mr. Soria to prison will not achieve this goal because prison has "criminogenic" effects. Martin H. Pritikin, *Is Prison Increasing Crime*, 2008 Wis L. Rev. 1049, 1054-72 (cataloging eighteen criminogenic effects of incarceration); *see also* U.S.S.C., Staff Discussion Paper, *Sentencing Options under the Guidelines* 19 (1996) (imprisonment has

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

13

criminogenic effects, such as contact with more serious offenders, disruption of legal employment, and weakening family ties).

These criminogenic effects are attributable to incarceration's tendency to "create [] habits of thinking and acting that can be dysfunctional in periods of post-prison adjustment." Craig Haney, *The Psychological Impact of Incarceration: Implications for Post-Prison Adjustment* 4 (2001), https://aspe.hhs.gov/pdf-report/psychological-impact-incarceration-implications-post-prison-adjustment. These psychological consequences "may represent significant impediments to post-prison adjustment. They may interfere with the transition from prison to home, [and] impede ... successful reintegration into a social network and employment setting." *Id.*

In fact, "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime." National Institute of Justice, *Five Things About Deterrence*, https://www.ncjrs.gov/pdffiles1/nij/247350.pdf. Research consistently shows that the certainty of being caught and punished has a deterrent effect, but "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). According to "the best available evidence, … prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). Thus, a custodial sentence does not have statistical or evidentiary value as having a deterrent effect and should not be imposed here.

## CONCLUSION

The proposed sentence and the fact of this prosecution, for someone like Mr. Soria, is significant and pragmatic because this is not someone who will ever reoffend and who feels extreme remorse for his criminal conduct. Regardless of the Court's imposed sentence, Mr. Soria's life is forever changed: he has brought financial and emotional stress to his wife and daughters, he has brought shame to his family, he has been unable to support his family, and most importantly, he is susceptible to *falling ill in prison and being deported*. Thus, the custodial term recommended

nicolas soria's SENTENCING MEMORANDUM
Case No. CR-19-381 CRB

14

1   by the Government and Probation conflicts with the goals set out in the sentencing statute

2   designed to ensure than an offender successfully rehabilitates and re-joins society as a fully

3   functional and law-abiding person without subjecting the offender to insurmountable and life-

4   altering consequences such as severe risk of morbidity and indefinite family separation. The health

5   risks of incarceration during COVID-19 for Mr. Soria are real and dangerous. He is most certainly

6   someone who would receive compassionate release if he were in custody. Rather than have him go

7   through that lengthy process of seeking release and risking deportation, the defense asks this Court

8   to sentence Mr. Soria to credit for time served, three years of supervised release, counseling if

9   needed, and a period of community service as deemed appropriate by this Court in a setting such

10  as a homeless shelter, youth organization, or food bank.

11

12  Respectfully Submitted,

13

14  DATED: September 16, 2020          /jmj/
                                        _____
                                        Julia Mezhinsky Jayne
15                                      Ashley Riser
                                        Counsel for NICOLAS SORIA
16

17

18

19

20

21

22

23

24

25

26

27

28  nicolas soria's SENTENCING MEMORANDUM
    Case No. CR-19-381 CRB
                                        15